UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM HELMS, et al.,            Case No. 1:11-cv-410

       Plaintiffs,            Bowman, M.J.
   v.

NATIONWIDE INSURANCE
COMPANY OF AMERICA,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, William and Gail Helms, initiated suit in state court against their insurer, Defendant Nationwide Insurance Company of America, for breach of contract and bad faith. On June 23, 2011, Defendant removed the litigation to this federal Court based upon the parties' diversity of citizenship. On the same date, Defendant moved to dismiss Plaintiffs' complaint for failure to join a necessary party under Rule 19, Fed. R. Civ. P.

On July 18, 2011, the case was transferred to the undersigned magistrate judge for final disposition, pursuant to the parties' consent. *See* 28 U.S.C. §636(c) and Doc. 7. Having completed my review of the pending motion, I now conclude that Defendant's motion to dismiss should be denied at this time.

**I. Background**

Plaintiffs' claims emanate from a dispute over their underinsured motorist ("UIM") policy. On February 23, 2010, Plaintiff William Helms was involved in an automobile

1

accident in Hamilton County, Ohio. Plaintiffs allege that the accident was caused by the negligence of another driver, Joshua Sanders ("the Tortfeasor.") The Tortfeasor is alleged to have been insured by Progressive Casualty Insurance Company ("Progressive"). Neither the Tortfeasor nor Progressive are currently parties to this litigation.

Mr. Helms sustained serious injuries during the accident, which he asserts resulted in significant monetary damages. His wife, Gail Helms, alleges damages resulting from the loss of her husband's companionship. (Doc. 3). Plaintiffs had an active UIM policy ("the policy") at the time of the accident, which is alleged to include UIM coverage in the amount of $300,000 per person. (*Id.*).

While not attached to the complaint, a copy of the policy has been filed as an exhibit to Defendant's Reply in Support of Nationwide's Motion to Dismiss. (Doc. 8-1). According to that policy, UIM is to be paid to the Plaintiffs upon their completion of the "Insured Persons' Duties." (Doc. 8-1 at 24). The policy states: "After we make payment under this coverage, we may require the insured to take legal action against any liable party." The policy also states that an insured "may bring legal action against the other party for bodily injury," and that if the insured does so, he or she must serve Defendant with copies of any papers served in that litigation. (*Id*.). The insured must obtain Defendant's written consent in order to settle or release any liable party, and must also "preserve and protect our right to subrogate against any liable party." (*Id*.).

The parties represent that the Defendant has advanced $100,000 in coverage to the Plaintiffs. (Doc. 3, ¶12) That payment was executed pursuant to an agreement between Plaintiffs and Defendant on March 4, 2010, and represented the limits of the

liability insurance coverage provided by the Tortfeasor's policy with Progressive.  (*Id*.; Doc. 5 at 2).  Although a copy of the March 4 Agreement has not been filed in this Court, Plaintiffs state that payment was conditioned only upon their agreement to "pay over" to Defendant any amounts that they may collect from the Tortfeasor.  However, Plaintiffs represent that they "are no longer making a claim against Sanders" based upon Defendant's decision to advance the limits of the Tortfeasor's policy. (Doc. 5 at 3). Defendant's motion to dismiss, brought pursuant to Rule 12(b)(7), argues that the Tortfeasor is a necessary and indispensable party required to be joined under Rule 19 of the Federal Rules of Civil Procedure, such that Plaintiffs' failure to join him requires dismissal of all claims in this Court.

**II. Analysis**

**A.  Rule 19 Joinder**

Under Rule 12(b)(7), Fed. R. Civ. P., Defendant seeks dismissal on grounds that Plaintiffs have failed to join a necessary party under Rule 19.  Fed. R. Civ. P.19(a) states that a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction "must" be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) the person claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may:
>
>> (I) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

3

*Id.*

Under the rule, federal courts apply a three-step analysis to determine: 1) whether the absent party is necessary to accord complete relief; 2) if necessary, whether joinder is feasible; and 3) whether, if joinder would destroy jurisdiction, dismissal is required after consideration of the equities in the case. *See, e.g., Hooper v. Wolfe*, 396 F.3d 744, 747 (6th Cir. 2005); *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) ("Assessing whether joinder is proper under *Rule 19* is a three-step process").  Although Rule 19 analysis is based mostly on the structure of the federal rule, diversity jurisdiction cases require courts to consult an extra source: state substantive law.  *See generally Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Hanna v. Plumer*, 380 U.S. 460 (1965).  In practice, state substantive law affects the manner in which federal procedural law is applied to the extent that the impact of a joined or absent party is determined by the claims and remedies provided by state law.  That is not to say, however, that state law drives the Rule 19 analysis.  "State law provides guidance in determining whether the parties have an interest in the litigation, as defined by Rule 19, but state law is not determinative of the question of whether a party is necessary or indispensable for purposes of Rule 19." *Hooper*, 396 F.3d at 749.

In this case, the analysis begins and ends with the first step required under Rule 19 - examination of the role of the absentee party.  A necessary and indispensable party might be joined to protect the interests of the current parties or to protect his own interests.  *See Glancy*, 373 F.3d at 669.  The latter option is not applicable to the case at hand since it is in the Tortfeasor's interest to stay out of this litigation.  The

4

Tortfeasor's direct interest is not at stake because he had motor vehicle insurance with Progressive at the time of the accident.

Whether the Tortfeasor's non-joinder affects the current parties requires more attention. Plaintiffs' suit seeks to collect UIM coverage allegedly owed to them by the Defendant. Plaintiffs' complaint is silent as to any payments made by or sought from the Tortfeasor or his insurer. Regardless, the Plaintiffs have demonstrated an interest in collecting their own UIM coverage from the Defendant, not from the Tortfeasor. The definition of an underinsured motorist, according to the policy, is a motorist who has a bodily injury policy, but whose "total amount available for payments is less than the limits of this [the Defendant's] coverage." (Doc. 8-1 at 23). By definition of their UIM coverage, Plaintiffs may make a claim to their policy limits only for damages that exceed the bodily injury coverage of the Tortfeasor. However, the inclusion of the Tortfeasor as a party is not necessary merely to demonstrate the limits of the Tortfeasor's policy coverage.

The Defendant has a greater interest in joining the Tortfeasor to the extent that Defendant presumably may collect, through its subrogation rights, any sum for which the Tortfeasor may remain liable to the Plaintiffs. The Defendant has already advanced $100,000 to the Plaintiffs - not under the UIM coverage, but in recognition of the coverage provided by the Tortfeasor's liability policy.[1] However, Defendant may itself file a third party complaint against the Tortfeasor to obtain reimbursement of that sum;

---

[1] The Defendant concedes that the policy itself did not require Defendant to advance the tortfeasor's policy limits, but that Defendant did so in recognition of Ohio law that holds that a UIM insurer may advance the tortfeasor's policy limits in lieu of granting consent to settle, in order to preserve the insurer's subrogation rights. *See Borgan v. Progressive Cas. Ins. Co.,* 36 Ohio St.3d 22, 521 N.E.2d 447 (1988)(overruled in part on other grounds by *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 781 N.E.2d 927 (2002)).

5

the claim by Plaintiffs against Defendant does not, strictly speaking, *require* joinder of the Tortfeasor by Plaintiffs to resolve the more limited dispute concerning coverage under Plaintiffs' own UIM policy. (Doc. 5-1). Thus, the Tortfeasor does not appear to be a necessary party through review of the pleadings alone.

### B. Ohio Underinsured Motorist Coverage Statute

Of course, the Court must also review the substantive law of Ohio to determine whether the Tortfeasor is a necessary and indispensable party to a suit brought by Plaintiffs against their insurer for UIM coverage. Although the Federal Rules of Civil Procedure generally apply, state law informs whether the Tortfeasor is a necessary party where, as here, the claims in question arise exclusively under state insurance law.

Ohio law provides that motor vehicle insurers may, but are not required to, offer UIM. *See* Ohio Rev. Code Ann. § 3937.18(A). For insurers who offer it, Ohio law mandates that UIM coverage:

> shall provide protection for insureds thereunder for bodily injury, sickness, or disease . . . where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the underinsured motorist coverage.

ORC § 3937.18(C).

In exchange for coverage, Ohio law requires that the insured "shall prove all elements of the insured's claim that are necessary to recover from the owner or operator of the uninsured or underinsured motor vehicle." ORC § 3937.18(D). Defendant's motion to dismiss argues that this provision of the statute mandates the inclusion of the negligent driver in any litigation. However, the fact that an insured must prove that he or she is entitled to recover from the underinsured driver does not require

6

that the insured actually file suit against the allegedly negligent driver. Rather, the Supreme Court of Ohio has held that courts must look to the express terms of the insurance policy in question to determine the obligations that the insured is required to fulfill prior to bringing a UIM claim against his or her insurer. *See Ponser v. St. Paul Fire & Marine Insurance Company et al,* 104 Ohio St. 3d 621, 625-626, 821 N.E.2d 173 (Ohio 2004)(holding that ORC § 3937.18 itself does not require any specific contractual terms, and that the policy in question determines the contractual duties of each party).

In *Ponser*, the insurer had moved for dismissal of its insured's uninsured motorist claim on grounds that the insured had failed to first pursue a recovery against the negligent driver. Although the negligent driver's fault was undisputed, the plaintiffs chose not to seek recovery against the driver because he was judgment proof, in that he "had no liability insurance policy in effect on the date of the accident, and otherwise [had] no assets." *Id.* at 621, 821 N.E.2d at 174. By the time plaintiffs filed suit against their own insurer, any claim against the driver was barred by the applicable statute of limitations. The defendant insurer refused coverage, arguing that the plaintiffs were required to sue the tortfeasor. The Ohio Supreme Court disagreed, holding that the plaintiffs were not required to initiate suit against the judgment-proof driver prior to suing their own insurer for uninsured motorist coverage, because the terms of the policy did not expressly require it. "[T]he policies employ language establishing that the filing of suit against the tortfeasor is done at the insured's discretion or at the insurer's request, contradicting any claim that filing a lawsuit is required in order to be 'legally entitled to recover' and thus mandatory for recovery." *Id.,* 821 N.E.2d at 178. Only in the case where a failure to file suit breached a contractual duty - for example, an insured's duty

7

to preserve an insurer's subrogation rights- could the insured contend that the filing of suit was a prerequisite to coverage.  Because the facts presented revealed the tortfeasor to be judgment proof, plaintiffs' failure to file suit against him "had no substantive effect on the insurers" and could not be said to be a breach of any contractual duty under the uninsured motorist policy.  *Id.* at 179.

In *Fischer v. United Services Automobile Association*, 2004 WL 637881, 2004 Ohio 1682 (Ohio Ct. App., 8th Dist., April 1, 2004), the Ohio Court of Appeals similarly held that a policyholder could pursue an uninsured motorist claim against his insurer even though the insured's suit against the tortfeasor had been dismissed for lack of prosecution.  Citing prior Ohio case law, the Fischer court held that the statutory phrase "legally entitled to recover" means only "that the insured must be able to prove the elements of his claim against the tortfeasor," and not "that damages must actually be proven in a lawsuit against the tortfeasor."  *Id.* at *3.  "It is the legal entitlement to recover from an uninsured motorist, not the pursuit of recovery itself, that gives rise to a claim for ...coverage." *Id.* at *4.

Defendant cites language in an earlier and partially overruled case, *Bogan v. Progressive Cas. Ins. Co.,* 36 Ohio St.3d 22, 28, 521 N.E.2d 447 (1988), in which the Ohio Supreme Court explained that the court did not mean "to suggest that ...an injured party may, voluntarily or otherwise, abandon his claim against the tortfeasor or his insurer and so proceed directly against the underinsured motorist insurer."  The quoted language, however, has been interpreted as standing for no more than the proposition that a subrogation clause is reasonably includable - and enforceable- in contracts providing underinsured motorist insurance.  The court in *Bogan* was specifically

8

addressing policy language that required the insured to exhaust the tortfeasor's liability limits "by payment of judgments or settlements" as a precondition to the insurer's <u>payment</u> of UIM - a duty that the Ohio court recognized was *not* otherwise contained in state law. *Id.* at 27. When the issue was squarely presented to the Ohio courts in the later-decided *Ponser* and *Fischer*, the state courts held without hesitation that the injured party is not required to sue the tortfeasor before filing suit against his or her UIM insurer, unless the failure to sue violates some other contractual provision of the policy at issue.

### C. The Plaintiffs' Policy

Under Ohio law then, the only question that remains is whether the precise terms of Plaintiffs' policy require joinder of the Tortfeasor. The policy attached to the Defendant's Reply Memorandum indicates that the Plaintiffs had paid for UIM coverage at the time of the accident, with a $300,000 limit per person or per occurrence on UIM. (Doc. 8-1, at 1-2). The policy requires Plaintiffs to prove that they are "legally entitled to recover" but as previously discussed, that language alone does not impose a duty to actually file suit against the tortfeasor.

The "Uninsured Motorists" portion of the policy contains additional requirements concerning notice to the insurer, including the nature and extent of the injuries. The insured must also provide all the facts of the accident, answer questions under oath if required by the Defendant, and submit to an examination by doctors chosen by the Defendant. (*See* Doc. 8-1 at 24 for full list of "Insured Person's Duties."). The policy also contains the following "exhaustion" language: "No payment will be made until the

limits of all other liability insurance and bonds that apply have been exhausted by payments." (Doc. 8-1 at 25).

Defendant argues that Plaintiffs' failure to sue the Tortfeasor violates their duty to exhaust available remedies from the tortfeasor, similar to the language referenced in *Bogan*. However, because the length of time involved in first obtaining relief from the tortfeasor might otherwise result in the expiration of the statute of limitations on the insured's claim for underinsured or uninsured motorist benefits, Ohio courts have generally construed such exhaustion terms as "conditions precedent to [the insurer's] duty to pay UIM benefits, not to [the insured's] right to file a lawsuit." *See Chalker v. Steiner*, 2009 WL 4755431 at *8 (Ohio Ct. App. 7th Dist., Dec. 8, 2009)(discussing interplay between statute of limitations provision in UIM policy and exhaustion language). Therefore, the exhaustion language does not necessarily bar Plaintiffs' lawsuit, even though it may impede Plaintiffs' recovery.

Other provisions also address the amount of money that Plaintiffs may recover. For example, the policy requires the insured to "repay us out of any recovery for any payments we [Defendant] have made and any expenses we have incurred in the action." (Doc. 8-1 at 24). The policy also states that the limits of UIM "will be reduced by any amounts available for payment by or on behalf of any liable parties ...including claims for bodily injury, loss of consortium, injury to the relationship, and any and all other claims" (*Id.* at 25). Again, while obligating the insured to repay the Defendant any "amounts available" from liable parties, these provisions do not specifically address the obligation of the insured Plaintiffs to file suit against the Tortfeasor.

10

The policy contains only two *specific* references to filing suit against the tortfeasor, both of which are expressed in discretionary language.  For example, the policy states that an insured "may bring legal action against the other party for bodily injury."  (*Id*. at 24). Clearly, the phrase "may bring legal action" cannot be transformed into a mandatory duty to file suit.

The second reference in the UIM coverage provision leaves open the possibility of a required duty to sue, but again, the language is expressed in a discretionary manner.  The policy reads:  "*After* we make payment under this coverage, we *may* require the insured to take legal action against any liable party."  (*Id*., emphasis added). Thus, the duty only arises "after" the Defendant has paid UIM benefits, and then only if the Defendant has - in some fashion- made clear that the insured has a mandatory obligation to sue the negligent driver.   In this case, Defendant has failed to demonstrate that Defendant itself fulfilled either prerequisite to converting Plaintiffs' otherwise discretionary decision on whether to sue the Tortfeasor into a mandatory duty.  That is, Defendant has not demonstrated that Defendant has first made "payment under *this* [UIM] coverage" (as opposed to advancing payment under the Tortfeasor's coverage) or that, after making payment, it clearly directed Plaintiffs to file suit against the Tortfeasor. The heart of Plaintiffs' complaint alleges that Defendant has failed to make payment under the UIM coverage portion of their policy.  Absent UIM payment followed by the insurer taking action to "require" the insured to file suit, the policy leaves to the Plaintiffs' discretion whether to first file suit against the Tortfeasor.  (Doc. 8-1 at 24).

Defendant's strongest argument relies upon policy language that states that the insured must preserve the insurer's subrogation rights, and do nothing to prejudice

11

Defendant's subrogation rights. Plaintiffs are required to "do whatever is proper to secure such [subrogation] rights, and do nothing to prejudice them." (Doc. 8-1 at 24). The policy also contains a general requirement that Plaintiffs "do whatever is necessary to recover for us payments made under this coverage." (*Id*.). However, neither the "do nothing to prejudice" clause nor the "do whatever is necessary" provision clearly requires Plaintiffs to file suit against the Tortfeasor, in light of more specific policy provisions that reflect that the filing of suit is discretionary.

On the other hand, the statement in *Bogan* that the injured party may not, voluntarily or otherwise, abandon his claim against the tortfeasor in order to proceed directly against his own insurer remains true both as a general principle and in the context of the policy at issue in this case. To the extent that an insured will lose his right to pursue UIM if, by his activity (i.e., settlement without his insurer's consent), or inactivity (i.e., failing to provide timely notice until following the expiration of the statute of limitations), he fails to preserve the insured's subrogation rights.

Unfortunately, this Court cannot determine whether Plaintiffs' failure to file suit directly against the Tortfeasor has <u>yet</u> prejudiced or impeded the Defendant's subrogation rights. In *Ponser*, the insurer's subrogation rights were not impacted because the tortfeasor was judgment-proof. The Ohio court opined that "when an uninsured tortfeasor is not judgment-proof, an insurers' contractual subrogation rights would be harmed by the failure of an insured to bring a ...claim against the tortfeasor." *Ponser*, 821 N.E.2d at 179. The defendants in *Ponser* had argued that permitting the insured to avoid suing the tortfeasor and proceed directly against his insurers would allow the insured to "thwart the carriers' subrogation rights," and would permit "insureds

12

to abandon their claims against the wrongdoer and proceed directly against their [uninsured-motorist] carrier." *Id.* The Ohio court dismissed any such "parade of horribles."

> When an insured's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. *An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary.*

*Id.*, 104 Ohio St. 3d at 628, 821 N.E.2d at 179 (emphasis added, quoting *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 781 N.E.2d 927 (Ohio 2002)).

The spare record presented to this Court contains no proof at all concerning the assets of the underinsured Tortfeasor, nor can the Court definitively determine whether Plaintiffs have ever pursued any claim against the Tortfeasor through settlement.[2] Defendant's motion to dismiss cannot be granted at this time, due to the insufficiently developed record concerning whether the Tortfeasor is a necessary party.[3] Other policy concerns expressed by the Defendant pertaining to judicial efficiency are simply not determinative to this Rule 19 analysis. Although the Tortfeasor feasibly could be joined in this action, the Defendant is not presently entitled to dismissal of Plaintiffs' claims on grounds that the Plaintiff was *required* to join him.

**III. Conclusions and Order**

I reach the following conclusions based upon Ohio law:

---

[2] While not evidence, Plaintiffs' counsel has represented in a responsive memorandum that Plaintiffs "are no longer making a claim" against the Tortfeasor. (Doc. 5 at 3).

[3] Although there is no need to reach the issue, both parties agree that the Court would have jurisdiction over the Tortfeasor because Mr. Sanders is a resident of Ohio.

1) Defendant has failed to show that Plaintiffs are required to formally file suit against the Tortfeasor under the UIM statute, case law, or the strict language of the policy at issue in this case;

2) Plaintiffs' failure to pursue any claim at all against the Tortfeasor prior to bringing a claim for UIM would be presumptively prejudicial to the insurer's subrogation rights; therefore,

3) Plaintiffs may not completely abandon their claim against the Tortfeasor in violation of their policy, absent proof that

> a) the Tortfeasor is without assets, such that abandonment results in no prejudice to the Defendant's rights;
>
> b) they are pursuing their claim in a manner so as to avoid prejudice (through extrajudicial settlement, for example); or
>
> c) some other circumstance exists that avoids any prejudice to the Defendant.

In short, although Defendant has failed to prove that it is entitled to dismissal of all claims under Rule 12(b)(7), it has raised a sufficiently serious issue concerning whether the Tortfeasor is a necessary party under Rule 19, such that the record must be further developed. Ohio law supports a finding of presumptive prejudice to the Defendant's subrogation rights where an insured fails to pursue *any* claim against the tortfeasor prior to suing his or her insurer. Therefore, **IT IS ORDERED THAT:**

Defendant's Motion to Dismiss Pursuant to Rule 12(b)(7) is **DENIED** but without prejudice to seek dismissal on the same or different grounds upon further development of the record.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge