## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WILLIAM HELMS, et al.,                                          Case No. 1:11-cv-410

　　　　　Plaintiffs,                                                Bowman, M.J.

　　　v.


NATIONWIDE INSURANCE
COMPANY OF AMERICA,

　　　　　Defendant.


## MEMORANDUM OPINION AND ORDER

　　　This breach of contract and bad faith case was filed by Plaintiffs against their insurer in state court, but was removed by Defendant to this Court on the basis of diversity jurisdiction.  Thereafter, the parties consented to final disposition before the undersigned magistrate judge, pursuant to 28 U.S.C. §636(c).  (Doc. 7).

　　　Although the parties appeared before the Court for a preliminary pretrial conference in September 2011, no scheduling order has yet been entered pending the Court's disposition of Defendant Nationwide's motion to strike Plaintiffs' first and second amended complaints.  In addition to Defendant's pending motion to strike, the Court on its own initiative notes a potential issue concerning service on the defendant recently named in the amended complaint, Joshua Sanders.

### I.  Factual and Procedural Background

　　　On February 23, 2010, Plaintiff William Helms was involved in an automobile accident in Hamilton County, Ohio.  Plaintiffs allege that the accident was caused by the

negligence of another driver, Joshua Sanders.  Sanders is alleged to have been insured by Progressive Casualty Insurance Company ("Progressive").  Mr. Helms alleges that he sustained serious injuries during the accident,[1] resulting in significant monetary damages.  His wife, Gail Helms, alleges damages resulting from the loss of her husband's companionship.  (Doc. 3).  Plaintiffs had an active underinsured motorist ("UIM") policy at the time of the accident, which is alleged to include UIM coverage in the amount of $300,000 per person.  (*Id.*).

Rather than filing suit against Sanders and/or Progressive, Plaintiffs initiated suit in state court against their own insurer, Defendant Nationwide Insurance Company of America, for breach of contract and bad faith concerning payment under their UIM policy.  On June 23, 2011, Defendant removed the litigation to this Court based upon the parties' diversity of citizenship, and simultaneously moved to dismiss based upon Plaintiffs' alleged failure to join a necessary party under Rule 19, Fed. R. Civ. P. Defendant Nationwide argued that Sanders, the actual tortfeasor, was a necessary party, and that Plaintiffs could not proceed under their UIM policy without also naming the negligent driver.

In its motion to dismiss, Nationwide represented that it has already advanced $100,000 to the Plaintiffs in recognition of the coverage provided by Sanders' liability policy.  Defendant did so in compliance with Ohio law that holds that a UIM insurer may advance the tortfeasor's policy limits in lieu of granting consent to settle, in order to preserve the insurer's subrogation rights.  *See Bogan v. Progressive Cas. Ins. Co.,* 36

---

[1] Nationwide disputes that Plaintiffs' injuries were proximately caused by the accident.

2

Ohio St.3d 22, 521 N.E.2d 447 (1988)(overruled in part on other grounds by *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 781 N.E.2d 927 (2002)).

On September 12, 2011, the Court denied Defendants' motion to dismiss based partly on the lack of information concerning whether Sanders was a "necessary," party, but without prejudice to Defendants to renew their motion following further development of the record.[2] The Court reasoned that: (1) Ohio law governing an underinsured motorist claim requires proof that the insured is "entitled to recover" from the underinsured driver, but does not mandate that an insured actually file suit against the negligent driver; (2) Ohio law requires courts to look to the express terms of the insurance policy to determine the conditions that an insured is required to fulfill prior to bringing a UIM claim; (3) only where a failure to file suit breaches a contractual duty - for example, an insured's duty to preserve an insurer's subrogation rights- can an insurer contend that the filing of suit is a prerequisite to coverage; and (4) the express language of the policy at hand suggested that suit against Sanders was discretionary absent the fulfillment of certain conditions, which Defendant failed to prove had occurred at the time of their motion.[3] (Doc. 10).

---

[2] Among the relevant documents not filed of record was the March 4, 2010 letter agreement between Defendant and Plaintiffs, concerning the advancement of $100,000 in coverage in order to preserve Defendant's subrogation rights against Sanders.

[3] One of those conditions required proof that Defendant had clearly directed Plaintiffs to file suit against Sanders. While Defendant's motion to dismiss itself might be construed as such direction, it was not considered to satisfy the condition precedent listed in the policy language. Plaintiffs assert that Defendant to this day has "never outright demand[ed] that Plaintiffs sue Sanders," but concede that Nationwide has "insisted that they file [suit against Sanders] in a roundabout way." (Doc. 17 at 8). As Nationwide points out, the language of the policy does not set forth a time limit for requiring Plaintiffs to sue Sanders, and, to the extent that Nationwide was attempting to resolve Plaintiffs' claim prior to suit being filed, common sense dictated against requiring Plaintiffs to pursue their claim against Sanders at that time.

However, because the policy language at issue stated both that the insured must preserve the insurer's subrogation rights, and that the insured must "do whatever is proper to secure" subrogation rights and "do nothing to prejudice them," (Doc. 8-1 at 24), the Court also agreed with Defendant that Plaintiffs could not simply abandon all claims against the negligent driver. Citing Ohio case law, the Court explained:

> [T]he statement in *Bogan* that the injured party may not, voluntarily or otherwise, abandon his claim against the tortfeasor in order to proceed directly against his own insurer remains true both as a general principle and in the context of the policy at issue in this case. To the extent that an insured will lose his right to pursue UIM if, by his activity (i.e., settlement without his insurer's consent), or inactivity (i.e., failing to provide timely notice until following the expiration of the statute of limitations), he fails to preserve the insured's subrogation rights.

*Id.* at 12. In other words, in order to recover UIM benefits, a plaintiff must prove that his damages exceed the tortfeasor's policy limits. Thus, a plaintiff who ignores the tortfeasor in proceeding against his own UIM insurer does so at his peril; no liability will accrue if the injured party abandons his underlying claim to the prejudice of the UIM insurer.

Defendant's prior motion to dismiss was denied without prejudice after the Court concluded that "this Court cannot determine whether Plaintiffs' failure to file suit directly against the Tortfeasor has <u>yet</u> prejudiced or impeded the Defendant's subrogation rights." At the time the Defendant filed its motion, neither party had presented any evidence as to whether Plaintiffs had ever pursued any claim at all against Sanders, or whether pursuing such a claim would be futile because Sanders is judgment-proof. *See*

*Ponser v. St. Paul Fire & Marine Insurance Company et al*, 104 Ohio St. 3d 621, 628, 821 N.E.2d 173, 179 (Ohio 2004).

As the Court previously stated: "Ohio law supports a finding of presumptive prejudice to the Defendant's subrogation rights where an insured fails to pursue *any* claim against the tortfeasor prior to suing his ...insurer" (Doc. 10 at 14).  However, the Court explained that Plaintiffs could overcome that presumption by proving:

> a) the Tortfeasor is without assets, such that abandonment results in no prejudice to the Defendant's rights;
>
> b) they are pursuing their claim in a manner so as to avoid prejudice (through extrajudicial settlement, for example); or
>
> c) some other circumstance exists that avoids any prejudice to the Defendant.

(*Id*.).  On September 15, 2011, following entry of the Court's Memorandum Opinion denying Defendant's motion to dismiss, the parties appeared through counsel for a preliminary pretrial conference.

Citing the Court's ruling, Plaintiffs orally moved for leave of court to file an amended complaint in order to bring a claim against Sanders -  implicitly conceding that Plaintiffs' failure to pursue Sanders might prejudice Nationwide on the facts presented. The Court granted Plaintiffs' oral motion, directing Plaintiffs to file their amended complaint and to answer Defendant's counterclaim within fourteen (14) days.  On September 23, 2011, Plaintiffs filed an amended complaint (Doc. 13), and on October 10, 2011, Plaintiffs filed a second amended complaint.  (Doc. 14).

On October 24, 2011, Defendant filed an answer to the second amended complaint, as well as a cross claim against Joshua Sanders and counterclaim against Plaintiffs.  (Doc. 15).  On the same, date, Defendant moved to strike Plaintiffs' amended complaint as exceeding the boundaries of the Court's ruling at the pretrial conference, and as otherwise procedurally improper.   (Doc. 16).  Plaintiffs have filed a response to the motion to strike, to which Defendant has filed a reply. (Docs. 17, 19).

On January 17, 2012, Plaintiffs filed an "Affidavit in support of Plaintiffs' Service by Publication on Defendant, Joshua Sanders."  No formal motion is pending before the Court regarding service, which pursuant to Rule 4(m), Fed. R. Civ. P., must be completed within 120 days of the date the amended complaint was filed.  Because it concerns personal jurisdiction over a party who ostensibly was the reason for filing an amended complaint, the Court will also address the issue of service.

## II.  Analysis

### A.  Motion to Strike

Defendant Nationwide has moved to strike Plaintiffs' first and second amended complaints pursuant to Rule 12(f), Fed. R. Civ. P.  That rule provides that a court "may strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." Nationwide argues that Plaintiffs' two amended complaints exceed the leave to amend orally granted by this Court at the preliminary pretrial conference, to the prejudice of the Defendant.   In addition, Defendant argues that some of the new allegations are immaterial and impertinent.  The Court agrees.

### 1.  The First Amended Complaint

Before turning to the heart of Defendant's arguments, the Court notes that only Plaintiffs' second amended complaint remains the subject of Defendant's motion.  In their response in opposition to Defendant's motion, Plaintiffs represent that their Second Amended Complaint "is designed to completely supersede the First Amended Complaint."  (Doc. 17 at 3).  To that extent, Defendant's request to strike Plaintiffs' First Amended Complaint from the record can be granted without impacting Plaintiffs' claims.

### 2.  The Second Amended Complaint

Defendant argues that although Plaintiffs have named Joshua Sanders in the caption of the second amended complaint, they have failed to assert any causes of action against him.  Nationwide argues that Plaintiffs' conduct "has placed Nationwide's subrogation rights directly at risk," since Nationwide "stands in the shoes of the insured-subrogor and has no greater rights than those of its insured-subrogor."  *Nationwide Mut. Ins. Co. v. Zimmerman*, 2004 WL 3038032 ¶16 (Ohio App. 5 Dist., Dec. 27, 2004).  In other words, Nationwide argues that to the extent that Plaintiffs' claim against Sanders is so deliberately and inartfully pled as to be subject to immediate dismissal, Plaintiffs have violated the terms of the insurance policy that requires them to preserve Nationwide's subrogation rights, doing "whatever is proper to secure" those rights and "nothing to prejudice them,"

Nationwide also complains that Plaintiffs have improperly added a new cause of action against Nationwide for declaratory relief, because Plaintiffs now seek a declaration that Plaintiffs have complied with the terms fo the Nationwide policy.  In their

second amended complaint, Plaintiffs allege that Nationwide has waived its rights to subrogate against the tortfeasor, (Doc. 14 ¶46), which allegations Defendant describe as impertinent on the record presented.

Defendant also seeks to strike the second amended complaint based upon Plaintiffs' allegations about the conduct of legal counsel after this litigation was initiated, as support for Plaintiffs' bad faith claim. (Doc. 14 ¶¶ 32-33, 39-40). Nationwide asserts that those allegations are both factually false, and that the allegations are legally irrelevant to Plaintiffs' bad faith claim.

Nationwide contends that the new allegations and claim against Nationwide violate the Court's instructions during the Rule 16 conference, because Plaintiffs' counsel asked only for leave to amend to add Joshua Sanders, and never sought leave to assert additional claims against Nationwide. Due to counsel's silence, Nationwide was not provided any opportunity to object to the amendment insofar as it concerns a new claim against Nationwide. Nationwide now strenuously objects on grounds that the new claim is subject to immediate dismissal. Based upon Plaintiffs' alleged violation of Rule 15(a) (failure to seek leave of court for the new claim), Nationwide asks the Court to strike the amended complaint in its entirety. In the alternative, Defendant seeks an order striking the referenced new allegations against Nationwide with prejudice, and requiring Plaintiffs to pay monetary sanctions in the form of defense costs for attending the pretrial conference, for preparing answers to the two amended complaints, and for preparing its motion to strike.

### a.  Rule 11

Within the body of their motion to strike, Defendants allege that "Plaintiffs have violated Fed.R.Civ.P. 11 and 15(a)." (Doc. 16 at 6).  In part, Rule 11 requires an attorney who files a pleading to certify by his or her signature that the legal contentions "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that the factual contentions have "evidentiary support or, if specifically so identified, will likely have evidentiary support" after discovery.  Rule 11(b)(2) and (b)(3).  However, Rule 11(c) also requires that any motion that seeks sanctions under the rule "must be made separately from any other motion" and must be first served but not filed or presented to the court until 21 days after service.  Based upon Nationwide's failure to comply with Rule 11(c), the Court declines to consider Defendant's arguments under Rule 11.

### b.  Rule 15(a)

Defendant correctly notes that because Nationwide had already served its responsive pleading, Plaintiffs could amend their original complaint only with leave of court under Rule 15(a).  Plaintiffs briefly argue that they "never formally moved the Court for permission to amend," and did not tender their proposed amended pleading. (Doc. 17 at 7).  However, both the parties and this federal Court remain bound by the Federal Civil Rules of Procedure.  Rule 15(a)(2) permits amendment of a complaint after an answer has been filed only "with the opposing party's written consent or the court's leave."

Plaintiffs did not obtain Nationwide's written consent but orally sought leave of Court to file an amended complaint at the September 12, 2011 preliminary pretrial conference. This Court granted leave for the sole purpose expressed at that time by Plaintiffs - to file a new claim against Joshua Sanders, the tortfeasor. Plaintiff asserts that the Defendant's reference to the Rule 16 conference discussions are "disingenuous," and lack supporting "transcripts, sworn statements or affidavits concerning the content of those discussions." (Doc. 17 at 6).

Pursuant to this Court's practice, no court reporter was present at the Rule 16 conference - a fact that precludes the filing of a supporting transcript and of which Plaintiffs' counsel was aware.[4] The Court finds Plaintiffs' criticism of Defendant for failing to file a supporting transcript to itself be disingenuous. Although the Defendant might have filed a supporting affidavit, that formality is of little consequence given this Court's own clear recollection of the proceeding before it.

Just as there is no question that amendment under Rule 15 was orally sought by Plaintiffs' counsel at the Rule 16 conference, there is equally no question that the Court granted the construed oral motion for the purpose of joining Sanders. It is true that the details of the proposed amendment were neither discussed in any great detail nor expressly limited by the minute entry, since the essence of a negligence claim in an automobile accident case is not complex and the drafting of particular allegations falls within the discretion of counsel. However, it is mistaken, if not misleading, for Plaintiffs to interpret the Court's ruling as *carte blanche* to name Sanders in the caption without

---

[4] In the future, if the parties desire a transcript of a conference, the presence of a court reporter must be requested 7 days prior to the conference.

actually asserting any claims against him, and instead to present amendments not discussed, including new claims against Nationwide. *See U.F.C.W. Local 56 Health and Welfare Fund v. J.D.'s Market*, 240 F.R.D. 149, 153 (D.N.J. 2007)(oral grant of motion to amend was implicitly limited to counsel's representation concerning simple addition of party; excessive amendment stricken under Rule 12(f)); *Dover Steel Co. v. The Hartford Accident and Indemnity Co.,* 151 F.R.D. 570, 574 (E.D. Pa. 1993)(rejecting notion that order granting leave to amend following telephone conference granted leave "to file any old amended complaint," when court had relied upon different tendered amended complaint than that which was filed).

### i. New Allegations Against Sanders

Plaintiffs assert that their second amended complaint does "just what Nationwide requested" because it "joins Sanders and makes substantive allegations against him." (Doc. 17 at 3). Notably, Plaintiffs fail to cite to any portion of their second amended complaint that makes "substantive allegations" against Sanders or presents any specific claim against Sanders. Under the "factual allegations common to all claims" section of their second amended complaint, Plaintiffs allege generally that Sanders had an insurance policy with Progressive, (Doc. 15, ¶16), and that Sanders "negligently operated his motor vehicle in such a manner that he struck W. Helms, causing him severe bodily injury." (*Id.*, ¶18). However, there is no claim of negligence or plea for damages against Sanders. Instead, Plaintiffs purport, "[i]n the alternative...[to] reserve all rights against Sanders." (*Id.,* ¶49). Absent any actual claim against Sanders, this alleged "alternative" reservation of rights does not equal a substantive claim, and

arguably would not preserve the statute of limitations for any future claim against Sanders.

Plaintiffs argue that by joining Sanders in the caption, they have refrained from prejudicing Nationwide because Nationwide can and has asserted a cross claim for subrogation against Sanders. This Court previously surmised that "Defendant may itself file a third party complaint against the Tortfeasor to obtain reimbursement" of the sum it previously advanced to Plaintiffs. (Doc. 10). Upon further reflection, the Court notes that Ohio law is not entirely clear on whether Nationwide can maintain an independent claim against Sanders without *any* viable claim being made by Plaintiffs. *See, e.g., Jesenovec v. Marcy*, ___ N.E.2d ___, 2011 WL 4389960 (Ohio App. 8 Dist., Sept. 22, 2011)(trial court erred in failing to permit UIM carrier to pursue claim against tortfeasor to enforce subrogation rights); *St. Paul Fire and Marine Ins. Co. v. Cassens Transport Co.,* 86 Fed. App'x 869, 2004 WL 162559 (6th Cir. 2004)(discussing limited right of UIM/UM carrier to pursue tortfeasor under Ohio law); *State Farm Mut. Auto. Ins. Co. v. Trumpy,* 2000 WL 1878951 (Ohio App. 6 Dist. Dec. 29, 2000)(UIM carrier could maintain suit against tortfeasor on facts presented, distinguishing cases involving contribution among joint tortfeasors). *But see, Cincinnati v. Keneco Distributors, Inc.*, 1999 WL 1048236 (Ohio App. 6 Dist., Nov. 19, 1999)(holding that right of subrogation does not confer upon UIM carrier a right to maintain an independent cause of action in negligence against an insured joint tortfeasor); *United Ohio Ins. Co. v. Faulds*, 118 Ohio App.3d 351, 692 N.E.2d 1059 (1997); *Westfield Ins. Co. v. Jeep Corp.*, 55 Ohio App.3d 109, 111, 562 N.E.2d 912 (1988).

In their second amended complaint, Plaintiffs have failed to present any viable claim that Sanders is liable to them.  Because Plaintiffs have failed to assert a claim of negligence or any other claim against Sanders, Sanders would be subject to immediate dismissal, assuming Plaintiffs achieve service.   Nationwide argues that Plaintiffs' conduct is prejudicial to Nationwide's rights and in violation of the express language of the policy.  Although the Court is not in the habit of issuing prospective rulings absent full briefing, the Court's prior Memorandum Opinion should have made abundantly clear to Plaintiffs that failing to "do *whatever is proper* to secure such [subrogation] rights," or failing to "do *whatever is necessary to recover for us payments made* under this coverage," or doing anything at all to prejudice Nationwide (Doc. 8-1 at 24), violates the express language of the UIM policy as well as Ohio law.  (Doc. 10 at 12)(emphasis added).

At the prior pretrial conference and again in opposition to Defendant's motion to strike, Plaintiffs continue to profess "no interest in incurring the costs to pursue a claim against Sanders when they have realized the benefit of his insurance coverage already."  (Doc. 17 at 6).[5]  But the benefit that Plaintiffs have realized cannot come at Nationwide's expense, either under the express terms of the policy or under Ohio law.  As the Court previously explained, if an insured either takes action (settlement without consent) or fails to take action against the tortfeasor that prejudices the right of the UIM carrier to recover from the tortfeasor, he risks forfeiting his UIM claim.  Again, while this Court is loathe to instruct any litigant on how best to plead their claim(s), Plaintiffs'

---

[5] Even in Plaintiffs' second amended complaint, Plaintiffs allege that after accepting the advance of payment from Nationwide, "Plaintiffs have no ongoing dispute with Sanders and do not have any reasonable basis to incur the expense necessary to pursue claims against him."  (Doc. 14, ¶26).

complaint states no viable claim against Defendant Sanders in its present form. Because leave to amend was implicitly conditioned upon counsel's representation that Plaintiffs sought leave to assert a claim against Sanders, and no viable claim has been asserted, the Court will grant Defendant's motion to strike.

### ii. New Allegations Against Nationwide

As an additional basis for striking the second amended complaint, Defendant argues that Plaintiffs' amendment dramatically exceeds the leave granted by this Court insofar as new allegations are asserted against Nationwide.  *See Keithley Instruments*, 599 F. Supp.2d 908, 912 (N.D. Ohio 2009)(striking new causes of action that exceeded court's grant of leave to amend); *accord Graves v. Mohoning County*, Civil Case No. 3:10-cv-2821, 2011 WL 3703950 *4 (N.D. Ohio, Aug. 23, 2011)(where court granted leave to amend within context of representations by counsel, Plaintiffs were not free to file "whatever amendment they saw fit.").  The Court agrees.

In opposition to the motion to strike, Plaintiffs counter that they have continually asserted bad faith against Nationwide, and the new allegations and claim for declaratory relief flow directly from that original claim.  Plaintiffs alternatively argue that "the spirit of Rule 15 is to permit the free amendment of pleadings," (Doc. 17 at 7), but Plaintiffs neglect to include the full language of the rule, which explains that amendment is required only "when justice so requires."  Rule 15(a)(2).

The new allegations against Nationwide were neither anticipated by the Court nor discussed at the preliminary pretrial conference in the context of Plaintiffs' oral motion to amend.  As with the purely nominal addition of Sanders, the new allegations against

Nationwide concerning the bad faith claim, and new claim for declaratory relief, arguably would not survive a motion to dismiss.

Plaintiffs' new allegations against Nationwide include the following:

> In response to the Complaint, Nationwide, through its Counsel, threatened to remove the Action to this [federal] Court unless Plaintiffs voluntarily withdrew their bad faith allegations and claims, despite the fact that the jurisdiction and venue for the Action have nothing to do with whether Plaintiffs have a substantive bad faith claim. Plaintiffs refused to give up this valuable right, and, on June 23, 2011, Nationwide did, in fact remove the Action to this Court

(Doc. 14, ¶32). Plaintiffs additionally allege that

> [I]n response to Plaintiffs' complaint, Nationwide moved to dismiss the Action, premised upon the fact that Plaintiffs failed to join Sanders into the Action originally, despite the fact that, as stated above, they had no continuing claim or dispute with Sanders. Importantly, prior to filing this Motion, as stated above, Nationwide had never demanded that Plaintiffs pursue and action against Sanders, nor has Nationwide made that demand to this day.

(*Id*. ¶33). In addition to these general allegations, Plaintiffs have amended their bad faith claim to allege that Nationwide has

> abus[ed] the jurisdiction of this Court to try to exact a dismissal of Plaintiffs' bad faith claims; and [sought] a dismissal of this Action, premised upon Plaintiffs' failure to join Sanders in the Action, even though it had never exercised its right under the policy to request that Plaintiffs do so.

(*Id.,* ¶39). Plaintiffs further allege that Nationwide's "bad faith conduct *is continuing and will continue throughout the pendency of this Action....,"* and that its "*actions undertaken in this Action*" are part of conduct that Plaintiffs describe as "outrageous, malicious and extreme." (*Id.,* ¶¶41, 42)(emphasis added).

Counts One and Two against Nationwide ostensibly mirror Plaintiffs' original claims of breach of contract and bad faith. However, in an entirely new "Count Three,"

Plaintiffs seek declaratory relief that "Nationwide has either waived, or Plaintiffs have complied with, all terms in the Policy requiring Plaintiffs to take action against Sanders or otherwise protect Nationwide's subrogation rights." (*Id., *¶48).[6]  In support of that relief, Plaintiffs allege that Nationwide "has never directed Plaintiffs to bring any type of legal action against Sanders," and has "waived its right to make such demand, or, in the alternative, Plaintiffs have satisfied this requirement...by joining Sanders as a party to this Action." (*Id., *¶46).  Plaintiffs additionally allege that they "have complied with all requirements in the Policy mandating that they protect Nationwide's subrogation rights against Sanders, to wit, the Court now has jurisdiction over Sanders, prior to the expiration of the applicable Statute of Limitations, due to Plaintiffs naming him in this Action, and Nationwide may cross claim against Sanders for any amounts it has paid out." (47).

In sum, Plaintiffs' new allegations charge Nationwide with bad faith based upon Defendant's post-litigation conduct, including counsel's decision to remove the case to this Court, and subsequent motion to dismiss based upon the failure to join Sanders. Plaintiffs also bring an entirely new claim that purports to seek a declaration that Plaintiffs have overcome any presumption of prejudice to Nationwide's subrogation rights simply by naming Sanders in the caption of the second amended complaint, or in the alternative, that Nationwide has waived any requirement that Plaintiffs pursue a claim against Sanders.

---

[6] Under Ohio law, a UIM insurer that objects to a proposed settlement between the insured and the tortfeasor and thereafter advances the amount of the tortfeasor's policy limits preserves its subrogation rights.  *Jesenovec v. Marcy*, ___ N.E.2d ___, 2011 WL 4389960 *6 (Ohio App. 8 Dist Sept. 22, 2011).

Plaintiffs contend that the new allegations concerning post-litigation conduct by defense counsel merely add to their bad faith claim against Nationwide. Plaintiffs indicate that they intend to depose "those involved" in Nationwide's post-litigation decisions, to the extent those decisions relate to Plaintiffs' bad faith claim. Alternatively, Plaintiffs attempt to characterize the new allegations as relating back "to Nationwide's original omission [failing to demand suit against Sanders] and not specifically to its post-suit conduct." (Doc. 17 at 13).

In seeking to strike the new allegations and claim for declaratory relief, Defendant cites substantial authority for the principle that post-litigation conduct by counsel generally does not - as a matter of law - support a claim of bad faith against an insurer. *See e.g., Dakota, Minnesota & Eastern R.R. Corp. v. Acuity*, 771 N.W.2d 623 (S.D. 2009)(surveying case law); *FDIC v. Aetna Cas. and Sur. Co.,* 903 F.2d 1073, 1080 (6th Cir. 1990)("pressing a legitimate contractual defense...can certainly not be a basis for a bad faith claim"); *Timberlake Constr. Co., v. United States Fidelity & Guar. Co.*, 71 F.3d 335, 340-341 (10th Cir. 1995)(evidence of litigation conduct rarely, if ever, admissible to prove bad faith); *Barefield v. DPIC Companies*, 215 W. Va. 544, 600 S.E. 2d 256 (W. Va. 2004)(if aggressive defense tactics were to constitute bad faith, it would improperly penalize the insurer for defending itself in litigation).

As other courts have observed:

Allowing litigation conduct to serve as evidence of bad faith would undermine an insurer's right to contest questionable claims and to defend itself against such claims. [P]ermitting allegations of litigation misconduct would have a chilling effect on insurers, which could unfairly penalize them by inhibiting their attorneys from zealously and effectively representing their clients within the bounds permitted by law. Insurers' counsel would

be placed in an untenable position if legitimate litigation conduct could be used as evidence of bad faith.

*Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 522 (Ky. 2006)(quoting *Timberlake*, 71 F.3d at 340-341). Nationwide voices the same concern, noting Plaintiffs' reference to deposing those involved in litigation decisions, which could intrude upon the attorney-client privilege and inhibit Nationwide's ability to fully defend itself.

Ultimately, the Court finds it unnecessary to determine whether the new allegations and claim against Nationwide for post-litigation conduct would survive a motion to dismiss. Instead, the Court concludes that the second amended complaint is subject to being stricken because the new allegations and claim against Nationwide clearly exceed any permissible bounds of the Court's prior grant of Plaintiffs' oral motion to amend his complaint. The grant of that motion was intended to be limited to Plaintiffs' assertion of a new claim or claims against the alleged tortfeasor, Joshua Sanders.

## B. Service of Joshua Sanders

As discussed, Plaintiffs' second amended complaint ostensibly names Joshua Sanders as a defendant. The record does not yet reflect any appearance by Mr. Sanders,[7] but on January 17, 2012, Plaintiffs' counsel filed an "Affidavit" in support of "service by publication" upon Defendant Sanders pursuant to Rule 4(d), Fed. R. Civ. P., and Ohio Civil Rule 4.4.

Plaintiffs have filed no formal motion seeking alternate service or an extension of time for service. Instead, Plaintiffs represent in counsel's affidavit that "service on

---

[7] The Court takes judicial notice of the fact that defense counsel served a copy of Defendant's motion to strike upon "J. Timothy Riker" in Cincinnati, Ohio, listed by Defendant Nationwide as "Attorney for Defendant Joshua Sanders."

Sanders by publication is appropriate," and conclude that "[t]his affiant therefore states that service upon Defendant Joshua Sanders will be complete forth with [sic]." (Doc. 20).

Plaintiffs' second amended complaint was filed on October 10,2011. Rule 4(m) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

*Id.*[8] "Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351, 119 S. Ct. 1322 (1999). Indeed, absent either waiver or proper service of process, this Court does not have personal jurisdiction over Mr. Sanders. *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (and cases cited therein). Plaintiff bears the burden of exercising due diligence in perfecting service of process and in showing that proper service has been made. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); *Jacobs v. University of Cincinnati*, 189 F.R.D. 510, 511 (S.D. Ohio 1999).

---

[8] The Court's discussion of service under Rule 4(m) is not intended to address any issues concerning the applicable statute of limitations. While exceptions may apply, ordinarily the addition of a new defendant does not "relate back" to the filing of a complaint. *See generally Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *DeBois v. Pickoff, MD*, 3:09-cv-230, 2011 WL 1233665 *10 (S.D. Ohio, March 28, 2011) (holding that *Krupski v. Costa Crociere*, 130 S. Ct. 2485 (2010) did not alter established law that "the addition of new parties alongside those that are already part of the action precludes relation back to the original complaint.").

Notwithstanding Plaintiffs' counsel's affidavit declaring service to be "complete," through "publication," the record reflects no effective service to date.  Service by publication is governed by Ohio Civil Rule 4.4 and Ohio Revised Code §2703.14.  Rule 4.4(A)(1) states:

> [I]f the residence of a defendant is unknown, service shall be made by publication in actions where service is authorized by law.  Before service by publication can be made, an affidavit of a party...shall be filed with the court.  The affidavit shall aver that service of summons cannot be made because the residence of the defendant is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the defendant, and the residence of the defendant cannot be ascertained with reasonable diligence.

(*Id.*).

In this case, Plaintiffs' affidavit begins by stating that Plaintiffs have "asserted a claim against Defendant, Joshua Sanders," (Doc. 20 at 1), a proposition with which this Court disagrees, as discussed above.  In any event, the affiant asserts that Plaintiffs "have attempted to serve Sanders through the Federal Civil Rules' waiver provisions at his last known address," but have "discovered that this address is invalid."  (*Id.*).  With no further detail, the affidavit concludes that "Plaintiffs have made attempts to obtain Sanders' current address to no avail."  (*Id.*).

The affidavit is patently invalid to support service by publication under Ohio Civil Rule 4.4, even if a motion had been filed.   The Ohio rule requires that any supporting affidavit set forth in some detail "all of the efforts made on behalf of the party to ascertain the residence of the defendant," in order to show that Plaintiffs cannot effect service "with reasonable diligence." In this case, the affidavit sets forth no details, and fails to show reasonable diligence.   It would appear that all that Plaintiffs have

20

attempted to do is to mail a waiver of the summons form. No information is set forth concerning Plaintiffs' attempt to contact Sanders' insurer, nor is there information concerning Plaintiffs' attempts to achieve personal service through inquiries to former neighbors, or searches of such city and county records such as the telephone book, city directory, credit bureau, auto title department or board of elections, or basic internet searches.

In addition to the facial infirmities of the affidavit under Ohio Civil Rule 4.4, O.R.C. §2703.14 sets forth the limited types of cases in which service by publication can be made. The only possible category applicable to the case at hand appears to be subsection (L), which provides for service by publication:

> [i]n an action in which the defendant, being a resident of this state, has departed from the county of his residence with intent to delay or defraud his creditors or to avoid the service of a summons, or keeps himself concealed with a similar intent.

O.R.C. §2703.14(L). There is nothing in the record to suggest that Mr. Sanders has departed his prior county of residence or the state of Ohio in an attempt to avoid service. *Accord Rittner v. Huggins*, 2008 WL 5111177 (S.D. Ohio Dec. 1, 2008)(denying motion for service by publication for lack of compliance with requirements); *Charter v. Hedges*, 2003 WL 21211943 (Ohio App. 3 Dist. May 27, 2003)(failure to show due diligence; plaintiffs made only "perfunctory" attempts through service by certified mail and contact of driver's insurance carrier).

Upon a showing of good cause for the failure to effect timely service, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *Osborne v. First Union Nat'l Bank of Delaware*, 217 F.R.D. 405, 408 (S.D. Ohio 2003).

In the absence of a showing of good cause, the court has discretion to dismiss *sua sponte*, provided that the plaintiff has notice of the proposed action. *See Osborne*, 217 F.R.D. at 408; *United States v. Gluklick*, 801 F.2d 834, 837 (6th Cir. 1986), *cert. denied*, 480 U.S. 919 (1987). At this point in time, Plaintiffs have failed to serve Defendant Sanders, have failed to demonstrate due diligence in their attempts to achieve service, and have sought no extension of the 120-day time limit mandated by Rule 4(m). However, because the second amended complaint is subject to being stricken from the record on other grounds, the issue of service - ordinarily of primary importance in obtaining personal jurisdiction - has become secondary.

Accordingly, **IT IS ORDERED HEREIN:**

1. Defendant's motion to strike Plaintiffs' first and second amended complaints (Doc. 16) is **GRANTED** but Defendant's related request for monetary sanctions is **DENIED**. Both amended complaints (Docs. 13, 14) shall be stricken from the record for the reasons stated herein;

2. To avoid any further confusion, to the extent that Plaintiffs seek to pursue any claims against Joshua Sanders, they must file a formal motion for leave to amend pursuant to Rule 15(a)(2) and attach their amended complaint on or before **February 20, 2012.**[9]

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[9] The Court's time limit for bringing claims against Sanders is not intended to express any opinion concerning any defenses to such claims, including but not limited to the applicable statute of limitations.